UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GERALDINE HATHORN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:04CV367 TIA |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. Claimant seeks judicial review of the final decision denying her request for waiver of recovery of overpayment of Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.    Procedural History**

On January 22, 1996, claimant, Geraldine Hathorn, filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 45-48).[1] Claimant was found to be disabled and began receiving disability benefits. (Tr.

---

[1] "Tr." refers to the page of the administrative record filed by the defendant with its Answer (Docket No. 12/filed July 20, 2004). In an earlier application, ALJ Mark Brown found claimant entitled to a period of disability and insurance benefits beginning May 15, 1989. (Tr. 12). Claimant started working as a computer operator in December 1991 and completed a nine-month trial work period in September 1992, earning in excess of $500 a month from 1992 through 1995. Claimant was charged with an overpayment of Title II disability insurance benefits in the amount

12). In a letter dated February 17, 1997, claimant received notice regarding a monthly adjustment indicating that "[b]ased on prior correspondence, $100.00 will be withheld from your benefits each month. Full benefits will be resumed 11/99." (Tr. 20).

On April 24, 1997, Pat Gaffigan, a field office manager, sent claimant a letter reviewing the evidence in claimant's disability claim and finding claimant's disability to be continuing. (Tr. 15-18). In the letter, Ms. Gaffigan explained that as a result of a change in the law, the administration changed the way trial work months are counted. (Tr. 15).

> Under the new law, effective 1992, only trial work months in a period of 60 months in a row count. You have worked in at least four month(s) of the 9-month trial work period. We counted the following as trial work month(s)
> January 1997
> February 1997
> March 1997
> April 1997
> Your claim will be reviewed from time to time to see if you are still eligible for benefits based on disability. When your claim is reviewed, you will be contacted if there is any question as to whether your eligibility continues. If you are receiving Supplemental Security Income payments, any decision about that claim will be sent in a separate notice.

*****

> IMPORTANT INFORMATION
>
> Do you want to work but worry about losing your payments or Medicare before you can support yourself? If so, the following information highlights how going back to work may be easier.
>
> EXPLANATION OF THE TRIAL WORK PERIOD
>
> In most cases, a person can work and earn any amount of money for up to 9 months. The months do not have to be in a row. During this time, called a trial work period, disability payments can still be paid. The following information shows how we count the 9 months of the trial work period.

***

> Beginning in January 1992, the trial work period is not over until 9 trial work period months are completed in a period of 60 months in a row.

---

of $ 8059.50, covering the period of time from December 1992 to February 1994.

(Tr. 15, 18).

In the Notice of Change in Benefits dated August 5, 2001, the Social Security Administration apprised claimant of the overpayment in the amount of $31,548.80 based on her ability to work and explained to claimant how to challenge the overpayment determination by either filing an appeal or request a waiver. (Tr. 42-44).

Claimant filed a Request for Waiver of Overpayment Recovery on September 4, 2001, contending that the overpayment was not her fault, and she could not afford to pay the money back. (Tr. 33-40). Claimant explained that she was not at fault in causing the overpayment or accepting the money because of a letter she received from the Social Security Administration after she reported returning to work. (Tr. 34).

On November 26, 2001, the Social Security Administration denied claimant's Request for Waiver of Overpayment Recovery. (Tr. 31-40). A Report of Contact dated December 6, 2001, reflects that a personal conference occurred between claimant and C. Ayers. (Tr. 41). In the Overpayment Information letter dated December 18, 2001, the Social Security Administration set forth its reasons for not waiving the collection of claimant's overpayment of $31,548.00. (Tr. 28-30). In relevant part, Terry Lynch, a district manager for the Social Security Administration, explained to claimant why she would not be entitled to waiver of the overpayment:

> This is the second overpayment for this number holder. This is a second period of disability for this number holder. This second overpayment was caused for the same reason as the first, working over the trial work period at the substantial gainful level and continued receipt of social security benefits. She said she had reported her work, and we sent her a letter telling her that her benefits were continuing. The letter dated April 24, 1997 stated that she had worked in at least 4 months of the trial work period/January 1997 thru April 1997. But she failed to

> read all of the letter because it explains that her benefits should stop after the end of the trial work period if she continues to earn over the substantial gainful level. The worker did not return the checks even thought the letters told her of the earnings limits. She should have been aware of the limits because of the prior overpayment for the same reason.
>
> We apply three tests when we decide if you are at fault in causing an overpayment. The first is whether you made an incorrect statement or a statement which you knew or should have known was incorrect. The second is whether you failed to give us timely information which you knew or should have known was important. The third is whether you accepted payments which you either knew or could have been expected to know were incorrect.
>
> The number holder was overpaid in a prior period of disability for the same reason and she was notified of the substantial gainful earnings limits, and she should have known she was being overpaid because of the amounts she was earning and the limits.
>
> Therefore, based on the facts we have, we cannot waive the collection of this overpayment. This means that you must pay this money back.

(Tr. 28-29).

Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 5-6, 24-27). On January 8, 2003, a hearing was held on the overpayment issue before the ALJ. (Tr. 119-26). Claimant testified. The ALJ determined that claimant was overpaid by $31,548.80 and that the overpayment was not waived. (Id.) Thereafter, on April 22, 2003, the ALJ issued a decision finding claimant was overpaid Title II disability insurance benefits in the amount of $31,548.80 and was not without fault in receiving the overpayment. (Tr. 7-14). On January 23, 2004, the Appeals Council found no basis for changing the ALJ's decision and denied claimant's request for review of the ALJ's decision. (Tr. 2-4). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

**II.     Evidence Before the ALJ**

### A. Hearing on January 8, 2003

#### 1. Claimant's Testimony

At the hearing on January 8, 2003, claimant testified in response to questions posed by the ALJ. (Tr. 119-26). Before starting his questioning, the ALJ reminded claimant she had been advised of her right to have an attorney or some other qualified representative present to represent her. (Tr. 121). Claimant acknowledged that she wished to proceed without an attorney and did not want additional time to consult with an attorney. (Tr. 121). The ALJ noted on the record that the hearing involved an overpayment case covering a period of time from January 1998 through July 2001. (Tr. 123). Claimant acknowledged that she previously had one other overpayment case. (Tr. 123).

At the time of the hearing, claimant was fifty-five years of age. (Tr. 122). Claimant testified that she has worked as a full-time computer programmer at Schnucks Markets for the last five years. (Tr. 122-23). Claimant testified that she notified the Social Security Administration after she started working when she received the first disability benefit check by contacting the downtown office but she could not recall the person she contacted. (Tr. 123, 125-26). Claimant testified that she continued to receive disability benefits from January 1998 through July 2001 but that she spent the money on various things. (Tr. 123). Claimant explained that she has two checking accounts, one at Commerce Bank for her payroll checks and another at Bank of America for her disability benefits. (Tr. 123). Claimant testified that her balance in the Commerce Bank account was $2,615.76 on December 16, 2002. (Tr. 124). Claimant testified that she reported her income in a timely manner and did whatever was asked of her. Claimant explained that she had been told that her benefits would be cut off under the rules but thereafter,

claimant discovered that the benefits were still being deposited into her account. Claimant explained that she contacted the Social Security office inquiring into the continued disability payments. Claimant reported being told that her payments would not be stopped, but reduced, because of her work status. (Tr. 124). Claimant testified that another employee at the Social Security office explained after a hearing, she would not receive benefits. (Tr. 125). Claimant explained until the hearing, she understood that her payments would be reduced, not stopped. Claimant explained that she believed the money deposited into her account by the Social Security Administration to be hers and she spent the money. Claimant noted that the mistake with respect to the overpayment was not an error on her part and repaying the overpayment would create a hardship for her. (Tr. 125). Claimant testified that she contacted the Social Security Administration every year when she received a raise regarding the payment of benefits. (Tr. 126).

### III. The ALJ's Evaluation of the Evidence

The ALJ evaluated the evidence at the hearing as follows:

The claimant was born December 6, 1947. She is a high school graduate with about a year of college credits. She had various jobs before May 1989. In a post-hearing decision dated August 16, 1990, Administrative Law Judge Mark A. Brown found the claimant entitled to a period of disability beginning May 15, 1989 and to disability insurance benefits under Sections 216(I) and 223 of the Act, following an application filed August 4, 1989. The disability was based primarily on bilateral keratoconus, a severe vision disorder, along with degenerative disc disease at L3-L4, hypertension and obesity. Judge Brown found the claimant to have a residual functional capacity for less than sedentary work, but not to be statutorily blind as defined in 20 CFR 404.1581. This meant that claimant was not entitled to the special work and substantial gainful activity considerations for blind persons that are contained in 20 CFR 404.1586(b). If and when she resumed work, she was covered by the same trial work period and substantial gainful activity rules that applied to all non-blind workers.

The claimant started working as a computer operator in about December 1991. She completed a 9-month trial work period in about September 1992. She earned in well in excess of $500 a month for every year from 1992 through 1995. She was charged with an overpayment of Title II disability insurance benefits in the amount of $8059.50 covering the period of time from December 1992 to February 1994, and her disability status was terminated after she completed the trial work period and continued to perform work at the substantial gainful activity level thereafter. The claimant was notified of this overpayment in 1994 or 1995, and it was the subject of a previous case she had involving the same subject matter covered by the present case.

The claimant was found disabled again, based on a new application for a period of disability and disability insurance benefits filed January 22, 1996. The reason for the disability is not in the file, but presumably it was for much the same impairments that were noted by Judge Brown in August 1990. At this point, the claimant, being in a new period of disability, was entitled to a new trial work period if and when she started working again and earning at least $200 a month. She did no work during 1996, but in January 1997 she started working as a computer operator for a local grocery store chain. On April 24, 1997, the Social Security Administration sent the claimant a notice, stating that she had already completed four months of a new trial work period, from January through April 1997. Attached to the notice was an explanation of the trial work period, saying it would be completed when the claimant worked for nine months during a 60-month period and earned $200 or more during each of the nine months. It also stated that she would not be entitled to disability insurance benefits after that 9-month period during each subsequent month she earned more than $500.

The claimant completed her new 9-month trial period in October 1997, and was no longer entitled to disability insurance benefits after December 1997. However, she continued to receive her Social Security disability checks for each month from January 1998 through July 2001. The claimant, after December 1997, earned well in excess of $500 for every month from June 1999, more than $700 for every month from July 1999 through December 2000, and more than $740 a month for every month from January through July 2001. She earned more than $27,000 in 1997 and more than $30,000 for each year from 1998 through 2001.

There is no question that the claimant was overpaid as charged from January 1998 through July 2001. The Social Security Administration informed her of the overpayment of $31,548.80 by notice dated August 5, 2001. Instead, the claimant alleges that she was not at fault in receiving the overpayment amounts. She states that she informed the Administration the first month she resumed work, in January 1997, and says that she was told by a person there whose name she does not know that she could continue receiving the checks. The claimant never returned the

checks. She testified that she contacted more than one Social Security office, and was told that she could continue receiving the checks because of the way her benefits were being calculated.

The claimant was not without fault in receiving the overpayment amounts. Even is she reported her return to work, she either knew (because of the circumstances of her previous overpayment for the same reasons), or should have known (because of the detailed explanation of the trial work period and non-entitlement for months of substantial gainful activity after completion of the period contained in the April 24, 1997 notice, and because she should have realized something was amiss when she continued receiving normal-sized disability checks for more than 3 ½ years despite a rather large and steady work income), that she was not entitled to the checks she continued to get after she completed her new trial work period at the end of 1997.

There is no documented record of what one or more Social Security officials may have told the claimant about her benefit eligibility after she resumed work in 1997. It is common knowledge that persons often hear what they want to hear, and that answers are often the result of what questions are asked and how the questions are framed. Whatever answers the claimant may have received from these officials cannot be accurately evaluated without knowing precisely what questions the claimant asked. Depending on what she asked, it is not surprising that she may have been told that her check eligibility would continue for such-and-such a period of time. The person answering may have been answering based on misleading or incomplete information provided by the claimant. In any event, the claimant was not very diligent in seeking out the correct information regarding her eligibility.

The claimant's allegation that she did not know or could not have been expected to know that she was being overpaid is not credible. Because she was not without fault, the issue of her ability to repay the overpayment is not relevant.

(Tr. 12-14) (internal footnotes omitted).

### IV. The ALJ's Decision

The ALJ found that claimant was overpaid Title II disability insurance benefits under Title XVI in the amount of $31,548.80 for the period of time from January 1998, through July 2001. (Tr. 14). The ALJ found that claimant knew or should have known that the benefit payments were incorrect and therefore claimant was not without fault in receiving the

overpayments. The ALJ determined claimant's recovery of the overpayment is not waived. (Tr. 14).

**V.     Discussion**

The Court's review of the agency decision is directed towards a determination whether the ALJ's decision on "fault" is supported by substantial evidence. Coulston v. Apfel, 224 F.3d 897, 901 (8th Cir. 2000). Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because she was not at fault in causing the overpayment of benefits inasmuch as she reported her income.

A.          <u>The ALJ's Determination that Claimant was not Without Fault</u>

Claimant argues that she was not at fault in the overpayment of benefits for several reasons.

The ALJ found that claimant was overpaid Title II disability insurance benefits under Title XVI in the amount of $31,548.80 for the period of time from January 1998, through July 2001. The ALJ found that claimant knew or should have known that the benefit payments were incorrect and therefore claimant was not without fault in receiving the overpayments. The ALJ determined claimant's recovery of the overpayment is not waived.

Where an overpayment of benefits is made, 42 U.S.C. § 1383(1)(A) provides that "proper adjustment or recovery shall, subject to the succeeding provisions of this subsection, be made by appropriate adjustments in future payments to such individual." 20 C.F.R. § 416.537 defines overpayments as "payment of more than the amount due for any period." The Commissioner is required to recover overpayments of Social Security benefits. 42 U.S.C. § 1383(b)(1). Recovery of social security benefits is governed by 42 U.S.C. §404(a), which provides that recovery shall be made for overpayments. However, the Commissioner may not recoup payment(s) from:

> ...any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. In making for purposes of this subsection any determination whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have....

42 U.S.C.§ 404(b); <u>see also</u> 20 C.F.R. §404.506. 20 C.F.R. § 416.550 in relevant part delineates when it is appropriate to waive recovery of an overpayment:

> Waiver of adjustment or recovery of an overpayment of SSI benefits may be granted when ....
> (a) The overpaid individual was without fault in connection with an overpayment, and
> (b) Adjustment or recovery of such overpayment would either:
> (1) Defeat the purpose of title XVI, or

(2) Be against equity or good conscience, or
(3) Impede efficient or effective administration of title XVI due to the small amount involved.

In interpreting § 416.550, the Eighth Circuit Court of Appeals emphasized that the recovery of overpayment should be waived, according to the Regulations, where the Social Security recipient "is without fault, and recovery would be against equity and good conscience." Gladden v. Callahan, 139 F.3d 1219, 1222 (8th Cir. 1998). The court further explained the circumstances under which a recipient might be found at fault and stated that the recipient:

> might be determined to be at fault for accepting overpayment ... if the evidence shows he should have recognized that his changed circumstances warranted notice to Social Security, or at least an inquiry about any effect of that change on his eligibility. 20 C.F.R. § 404.507(b) ("[F]ault on the part of the overpaid individual ... depends upon whether the facts show that the incorrect payment to the individual ... resulted from [f]ailure to furnish information which he knew or should have known to be material....").

Id. at 1223. In determining whether a claimant is without fault, the ALJ considers all pertinent circumstances, including the claimant's age, intelligence, mental condition, and education. 20 C.F.R. § 404.507. The determination of fault depends upon whether the facts show that the overpayment resulted from the following:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R.§ 404.507.

Even if the claimant meets her burden and establishes she is without fault, the

inquiry does not end because a determination must be made whether repayment would defeat the purpose of providing Social Security to the claimant or would be against equity and good conscience. Coulston v. Apfel, 224 F.3d 897, 900-01 (8th Cir. 2000). The regulations define "defeat the purpose of Title II" as depriving a person of income required for ordinary and necessary living expenses, including food and clothing, rent, mortgage payments, utilities, maintenance, insurance, and taxes. 20 C.F.R. § 404.508. Recovery of an overpayment is "against equity and good conscience" when an individual changed his or her position for the worse, relinquished a valuable right because of reliance on the overpayment, or was living in a separate household from the overpaid person at the time of the overpayment and did not receive it. See 20 C.F.R. § 404.509(a). In considering the meaning of "equity and good conscience," the Eighth Circuit Court of Appeals held that:

> The Social Security Act is silent as to the meaning of the phrase against equity and good conscience. Unless otherwise defined, statutory words "will be interpreted as taking their ordinary contemporary, common meaning." The term equity "denotes the spirit and habit of fairness and justness." The term conscience means "the sense of right or wrong together with a feeling of obligation to do or be that which is recognized as good."...
> Although the legislative history does not reveal the meaning of the phrase, it does indicate that Congress intended to make recovery more equitable by authorizing the Secretary to waive recovery in certain circumstances.

Groseclose v. Bowen, 809 F.2d 502, 505 (8th Cir. 1987)(internal citations omitted).

As set forth above, the ALJ concluded that claimant was not without fault and that she was, therefore, not eligible for waiver of recovery of the overpayment of her benefits. The ALJ specifically noted that even if claimant reported her return to work, she either knew or should have known based on her previous overpayment experience with similar facts, that "something was amiss when she continued receiving normal-sized disability checks for more than

31/2 years despite a rather large and stead work income." (Tr. 13). In finding claimant was not without fault, the ALJ properly considered all of the pertinent circumstances including her age, intelligence, and any physical, mental, educational, or linguistic limitations. The ALJ cited how claimant has more than one bank account, one for her work earnings and one for her disability payments. The ALJ further noted claimant's history in dealing with the Social Security Administration evincing imputed knowledge of the issues regarding her employment and its effect on her eligibility for disability benefits. Claimant failed to submit any evidence and the record is devoid of any evidence supporting claimant's contention that she informed the administration of her correct work status. The ALJ properly did not address whether requiring claimant to repay the overpaid amount would deprive claimant of income she needs for necessities thus defeating the purposes of the Social Security Act. 20 C.F.R. § 404.506(c). Inasmuch as claimant was not without fault, the Court need not consider whether recovery would defeat the purposes of the Social Security Act or be against equity and good conscience.

Likewise, claimant's contention that requiring her to repay the overpaid amount would deprive her of the income she needs for necessities, thus defeating the purposes of the Social Security Act, is without merit. Claimant must first be without fault before the Court can consider whether recovery would defeat the purposes of the Social Security Act or be against equity and good conscience. Inasmuch as claimant was not without fault in receiving the overpayment amounts, the issue of her ability to repay the overpayment is not relevant.

To the extent claimant contends that it was the agency who was at fault in failing to stop claimant's benefits, this argument must fail. The agency regulations provide that even though "the Administration may have been at fault in making the overpayment, that fact does not

relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. Therefore, the fact that the agency may also be at fault does not relieve claimant of fault.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the decision of the Commissioner be affirmed.

Judgment shall be entered accordingly.

Dated this  11th  day of August, 2005.

       /s/ Terry I. Adelman       
UNITED STATES MAGISTRATE JUDGE